— The question presented in this case is, whether the consideration on which a written parol promise is founded, must appear in the instrument itself or in some other writing, or may be proved viva voce. At the common law, every agreement not under *Page 104 
seal requires a consideration to support it; but the consideration might be proved in any manner in the party's power — by the same instrument, or by a separate one, or by witnesses. The question therefore depends upon the act of 1819. (Rev. ch. 1016.) It is a new question in our Courts; and as it involves important consequences, and is one upon which there has been, upon similar statutes, much conflict of opinion in other Courts, we have very deliberately considered it. The majority of the Court is of opinion, that the statute does not operate upon the case, and that the consideration may be proved since, as before the statute. The act does not, on the one hand, give validity to an agreement, merely because it is written; but leaves the common law in force, which makes a consideration indispensable to its validity. So, on the other hand, while the common law requires such consideration, the statute does not prescribe that it shall be proved otherwise than at common law. If an alteration of such magnitude had been intended, as that no consideration should be required when there was a writing; or that, if required, the writing should set it forth; we think each would have plainly appeared by distinct enactments, and that neither would have been left to doubtful inference. The provisions actually made seem to have the obvious purposes of protecting persons from being drawn inconsiderately into sudden engagements touching the important properties in lands and slaves, and against the misunderstanding and misrepresentations of the extent of such engagements, by witnesses. Hence the contract must be put into writing and signed by the party to be chargedtherewith. It need not be signed by both parties; the one charged by the contract must sign it, and his signature shall suffice to charge him. If both are chargeable by the contract, as written, then both must sign it, to charge both. But if one only is to be charged on it, there seems to be no reason why it should contain any matter but such as charges him; that is, such stipulations as are to be performed on his part. It does not vary his contract, explain or alter it, to prove a consideration aliunde; for at the common law, such explanations or alterations by parol *Page 105 
evidence were as inadmissible as they could be. This proves, that the consideration is no part of the contract, but only the inducement to it;
and that the case is not more within the words than the spirit of the statute. To us it seems there could be no doubt upon the construction of the act, upon its terms and upon principle, were there no decisions either way. They have embarrassed us; but considering them upon their intrinsic merits, the weight of them is on the side to which our own opinion inclines. They are all regarded with respect; but, none of them having authority in this state, the respect must be in proportion to the degree of conviction produced on the mind by the reasoning of those who made them.
In England it must now be deemed the settled law, that under the statute of 29th Charles 2, contracts for the sale of land, in consideration of marriage, and to answer for the debt of another, must state the consideration. The point was first decided in 1804, in the case of Wain v.Warlters, 5 East, 10; and has been followed by the cases of Saunders v.Wakefield, 4 Barn. Ald. 595, (and 6 Eng. Com. Law Rep. 530,) and Jenkinsv. Reynolds, 3 Brod. Bing. 11, (and 7 Eng. Com. Law Rep. 328,) and Lyonv. Lamb, in the Court of Exchequer, Fell on Guar. 318. The latter cases may, however, be regarded as decisions by compulsion under the authority ofWain v. Warlters, as the leading one. They are but submissions to that judgment, which was that of the Court of King's Bench. No trace of the doctrine can be found earlier than 1804. That fact has much more authority than the decision of any Court, or of a Superior Court followed by those which are inferior. The silence of all the Courts and counsel from the reign of Charles the Second, to the year 1804, implies that the law was deemed certain during that long interval. On which side of this question was the professional impression? It cannot be said that we have no means of ascertaining; and that the question was not made, because the statute was deemed plain; for in Ex parte Minet, 14 Ves. 189, Lord ELDON said, there was a variety of authorities directly contradicting Wain v. Warlters; and in Ex parte Gardom, 15 Ves. 286, he says, "until that case *Page 106 
was decided I had always supposed the law to be clear, that if a man agreed in writing to pay the debt of another, it was not necessary that the consideration should appear in the writing." I do not cite Lord ELDON'S words merely to put his opinion as authority upon the question of construction, against that of the Judges of the King's Bench; but for the sake of his testimony as to what was understood to be the law up to the time of the case in which that construction was rendered authoritative in that country. It cannot be denied, that if it was the true one there, upon the word agreement in the statute of Charles, it is equally true here, upon the word contract in our act. But Lord ELDON is not the only English Judge, whose opinion does not accord with that decision. In Egerton v. Matthews, 6 East, 307, which arose on the 17th section of the statute of frauds, the decision was irreconcilable with it. That section provides, "that nocontract for the sale of goods shall be allowed to be good, unless some note or memorandum in writing of the said bargain be made and signed by the parties to be charged with such contract." The contract then, was simply a bill of parcels with the prices; and yet it was held valid. The case was tried before Lord ELLENBOROUGH, at Nisi Prius, who had presided in Wain v.Warlters, and thought the case within that precedent and so ruled. But when the question was argued in Bank, he and the other Judges distinguished it upon the word bargain instead of agreement. If there be a difference between "bargain" and "agreement," I am unable to comprehend it. But that difference could not exist in the context of the 17th section, which callsthe bargain "such contract;" which surely must be as comprehensive as"agreement." In this country, we find as little satisfaction expressed with that case, as in England. Soon after the decision of Wain v. Warlters
reached us, the point was made in the Courts of New York and decided, without great consideration, in conformity to it; and after being thus established, has been followed in that state until it is there, as it ought to be, settled law. But Chancellor KENT, then Chief Justice, dissented from it in Leonard v. Vredenburg, 8 John. Rep. 29. In the other *Page 107 
Courts of the Union, we have been unable to find any willing recognition of the doctrine; and in several of the states it has been positively denied after full argument at the bar and from the bench. In Violett v. Patton, 5 Cranch, 142, the Supreme Court of the United States evaded the force ofWain v. Warlters, upon the words "promise or agreement," in the statute of Virginia; but I think, that "promise" and "agreement" there, are not used to describe different instruments or those of different obligation, but are obviously referred to the same thing; the promise being the agreement andvice versa. This decision evinces a great unwillingness to deny directly the authority of an adjudication, but the still greater unwillingness to follow it, as a reasonable one. In Connecticut, Judge SWIFT has opposed to it an able course of reasoning, which must greatly influence a dispassionate mind, not bound down by authority. (Note to Wain v. Warlters, in the American edition of East.) In South Carolina, the question is still reserved for decision by the Court; the case of Wain v. Warlters being expressly put in doubt. In Massachusetts, the whole law, and all the cases up to 1821, were reviewed in Packard v. Richardson, 17 Mass. Rep. 122; in which Chief Justice PARKER, in an elaborate opinion denies its correctness, as Chief Justice PARSONS had before done in Hunt v. Adams,5 Mass. Rep. 358, and overrules it. These last decisions are entitled to the more respect, because in Massachusetts the statute of Charles had been literally re-enacted as early as the year 1692; and, as in England, no question had been made upon it as altering the rule of the common law in respect to setting out the consideration in the written memorandum. But those eminent Judges declare, that from their earliest recollection a doubt had never been entertained upon the point.
As I before remarked, the weight of authority thus seems to be againstWain v. Warlters. At all events, the authority of that case is at least neutralized, and this Court is free to exercise its own judgment upon the question. We have done so; and the majority of the Court is of opinion *Page 108 
that the decision of his honour is erroneous and that the judgment must be reversed.
It may be proper to say, that, if in any case, the statute requires the consideration to be stated, it does so in all. We do not perceive a difference between executed, and executory, considerations in this respect, as there is the same danger of perjury in proving either. Our opinion goes on this; that the statute does not extend to the consideration at all, but that the fraud and perjury provided against, is that which charges the defendant to do what he never contracted to do.